UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JANE DOE, as Parent and Next Friend of K.B., a minor, <br><br> Plaintiffs, <br> v. <br><br> URBANA SCHOOL DISTRICT #116, Unit of Local Government; SCOTT WOODS, Individually and in his Official capacity as Principal of Urbana Middle School; DONALD D. OWEN, in his Official capacity as Superintendent of Urbana School District #116; AND THE BOARD OF EDUCATION OF URBANA SCHOOL DISTRICT #116, in their Official capacities, <br><br> Defendants. | Case No. 18-CV-2249 |

## ORDER

On September 28, 2018, Plaintiffs, Jane Doe, as Parent and Next Friend of K.B., a minor, filed a Complaint (#1) against Defendants Urbana School District #116, Scott Woods, Principal of Urbana Middle School, Donald D. Owen, Superintendent of Urbana School District #116, and the Board of Education of Urbana School District #116, alleging, pursuant to 42 U.S.C. § 1983, that Defendants violated K.B.'s rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution. On February 19, 2019, Defendants Urbana School District #116 and the Board of Education of Urbana School District #116 filed a Motion to Dismiss (#6). Plaintiffs filed a Response (#20) on April 2, 2019. For the following reasons, Defendants' motion (#6) is GRANTED in part and DENIED in part.

BACKGROUND

The following background is taken from the allegations in Plaintiff's Complaint (#1). At this stage of the proceedings, the court must accept as true all material allegations of the Complaint, drawing all reasonable inferences therefrom in Plaintiff's favor. See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

Plaintiff K.B. is a 14-year old female residing in Urbana, Champaign County, Illinois. She was enrolled at Urbana Middle School (UMS). Plaintiff Jane Doe is K.B.'s mother. Defendant Scott Woods was, at all relevant times, the principal of Urbana Middle School. Defendant Woods was responsible for the administration of discipline and education of students at Urbana Middle School. Defendant Donald D. Owen was, at all relevant times, the general Superintendent of Urbana School District #116.

On September 29, 2017, K.B. was duly enrolled as a full-time regular student at UMS. On that day, several students, including K.B., were involved in an altercation in the first floor hallway of UMS. Defendant Woods intervened, and "picked K.B. up bodily and threw K.B. down the hall where K.B. fell heavily onto her knees." Woods did not have any reasonable cause to engage K.B. in an excessive and violent physical manner. Upon seeing that he severely injured K.B., Woods attempted to pick K.B. from the floor and carry her to a classroom. Woods asked K.B. what happened and asked her if she was ok. K.B. informed Woods that her knees hurt from being thrown down the hall.

Neither Woods, Defendant Owen, or the Board of Education contacted Jane Doe to inform her of what happened to K.B. during the school day. Later in the evening, following the injury sustained at the hands of Woods, K.B.'s knee swelled up and caused her a great deal of pain. Jane Doe transported K.B. to the emergency room at Carle Foundation Hospital for treatment, where K.B. was diagnosed with a severe knee sprain. K.B. was placed in a walking boot/knee brace and put on crutches. She also received physical therapy for the rehabilitation of her knee.

Plaintiffs' Complaint contains six counts. Count I alleges a violation of 42 U.S.C. § 1983 against Defendant Woods; Count II alleges a violation of 42 U.S.C. § 1981 against Woods; Count III alleges a 42 U.S.C. § 1983 violation against Defendant Board of Education; Count IV alleges a violation of 42 U.S.C. § 1983 against Defendant Owen; Count V alleges an Illinois state law battery claim against Woods; and Count VI alleges an Illinois state law respondeat superior claim against Defendant Owen.

For the purposes of this motion, the court is concerned with the allegations in Counts I through III, because those counts contain factual allegations concerning the Defendant Board's policies and the resulting authority of the Board and Defendant Woods in implementing those policies. Plaintiffs allege that the Board and Owen had a "policy, procedure, or practice and custom, of failing to adequately train principals and personnel on the appropriate and correct procedures for apprehension, contacting parents of minors, conducting searches, avoiding profiling students on the basis of race, and preventing violations of the rights of students." Plaintiffs further allege that the

Board and Owen "had a custom of tolerating or acquiescing in the failure to adequately supervise, discipline its principals, and for failing to train its principals and personnel on the appropriate and correct procedures for apprehension, contacting parents of minors, avoiding profiling students on the basis of race, and preventing violations of the rights of its students."

In Counts I and II of the Complaint, Plaintiffs allege that Woods exercised, "or had been delegated authority to exercise, final policymaking authority for District 116 with respect to physical contact with students." Later in Count I, Plaintiffs plead that "Defendant Woods acknowledged that the Board had a policy, practice, and custom of student seizures." Plaintiffs allege that "the implementation of this policy, practice, and custom was delegated to Defendant Woods[,]" and that "Defendant Woods had the authority to not only implement, but to define the parameters and put into practice the seizure of minor students."

In Count III, Plaintiffs allege that the Board had "a policy or procedure or practice and custom of tolerating or acquiescing in its personnel inadequate investigation, failure to adequately supervise and discipline its personnel, or failing to train its personnel on appropriate and proper methods of student discipline, investigation, recognition, or correct procedures for apprehension, contacting parents, conducting seizures and inappropriate touching of students, and preventing violations of students' rights." Plaintiffs allege that the failure to train Woods led to the constitutional deprivations at issue. Plaintiffs allege that the Board should have known

that Woods was "going to touch or search K.B. or other students illegally and allowed Woods to proceed to implement his illegal seizure of K.B." Plaintiffs allege that the Board was deliberately indifferent in its promulgation of the policies that "caused, aided, or failed to prevent the violations and deprivations" of K.B.'s rights. Plaintiffs again alleged that "the implementation of this policy, practice, and custom was delegated to Defendant Woods[,]" and that "Defendant Woods had the authority to not only implement, but to define the parameters and put into practice the seizure of minor students."

ANALYSIS

Defendants argue that (1) Defendant Urbana School District #116 should be dismissed from the case because it is a legal entity that cannot be sued; and (2) that Count III should be dismissed against Defendant Board of Education for failure to state a claim.

*Motion to Dismiss Standard*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Factual allegations are accepted as true at the pleading stage, but "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir.2012) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

5

possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955) (internal quotation marks omitted).

*Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

*Dismissal of School District #116*

Defendants argue that Urbana School District #116 should be dismissed as a defendant in this case because it is not a legal entity, and has no legal existence under the laws of Illinois.  Plaintiffs respond that "[w]hether Urbana School District #116 is or is not a legal entity for the purposes of suit is a matter for the court to determine following additional inquiry, as Defendant[s] [have] provided no proof beyond [their] own assertion that USD #116 is a d.b.a. construct of the Board of Education."

Plaintiff has sued both Urbana School District #116 and the Board of Education of Urbana School District #116.  "According to Illinois law, the District is a geographical area in which the Board operates schools." *Klean v. Board of Education of Proviso Township School District 209*, 2010 WL 3732218, at *2 (N.D. Ill. Sept. 17, 2010), citing 105 Ill. Comp. Stat. 5/1–3 and *Board of Education of Bremen High School District No. 228 v. Mitchell,* 899 N.E.2d 1160, 1163 (Ill. App. Ct. 2008).  "Moreover, the Illinois School Code makes the Board, not the District, amenable to suit[,]"and "[t]hus, the Board, not the District, is the proper defendant in this suit."  *Klean*, 2010 WL 3732218, at *2, citing 105 Ill. Comp. Stat. 5/10–2.  Therefore, Defendant Urbana School District #116 is dismissed as a defendant in this case.  See *Klean*, 2010 WL 3732218, at *2; *Ford v. Rockford Illinois Public School District #205*, 2017 WL 5892253, at *1 n.1 (N.D. Ill. Mar. 13, 2017).

*Whether Count III is Sufficiently Plead*

Defendants argue that Plaintiffs cannot support a municipal liability claim against the Board of Education because: (1) they cannot show an express policy allowing corporal punishment; (2) they can only show one incident and thus cannot demonstrate a widespread practice; and (3) they cannot demonstrate that Woods had final policymaking authority.  Plaintiff responds that (1) the Board delegated its final policymaking authority to Woods and (2) the actions of Woods reflect a wholesale failure of the Board to train and supervise its employees.

Under the U.S. Supreme Court's decision in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), "there are three different ways in which a municipality or other local governmental unit might violate § 1983: (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

First, Plaintiffs do not respond to Defendants' argument that no express policy was alleged.  The court, having read the Complaint, also does not find that any express policy was alleged.  Rather, Plaintiffs focus their claim on a "a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and

well-settled as to constitute a 'custom or usage' with the force of law." See *Calhoun*, 408 F.3d at 379. Specifically, Plaintiffs allege that the Board's deliberate indifference in failing to properly train school employees and administrators, such as Defendant Woods, on how to properly seize students during altercations, predictably lead to the creation of a dangerous situation that led to the violation of K.B.'s rights.

In limited circumstances, a municipality may be held liable under § 1983 for constitutional violations resulting from a failure to properly train its employees. See *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). "To hold defendants liable under § 1983 and *Monell*, [a plaintiff] must demonstrate that the defendants' 'official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind his constitutional injury.'" *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016). To demonstrate that the municipality is liable for a harmful custom or practice, the plaintiff must show that the policymakers were "deliberately indifferent as to [the] known or obvious consequences." *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2010).

Defendants first argue that Plaintiffs have not stated a claim under this second *Monell* prong because they only allege, in a conclusory fashion, the existence of an unwritten, widespread custom of failure to train based on a single incident, which does not evince a policy, but rather evinces only a "random event." The Seventh Circuit has held that "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, 'except that it must be more than one instance,' [citation

9

omitted], or even three." *Thomas*, 604 F.3d at 303.  However, a single incident can be enough for liability where a constitutional violation was "highly foreseeable." *Miranda v. County of Lake*, 900 F.3d 335, 344 (7th Cir. 2018).

In their Response to Defendants' Motion to Dismiss, Plaintiffs argue only that the actions of Woods "reflect[s] a wholesale failure of the Board to train or supervise." Plaintiff has only plead the one instance.  However, Plaintiffs did plead that "the Board, knowing the inadequacy of the custom or practice and failing to train school personnel, should have personally participated to provide direction to school personnel or *knew, or should have known* that Woods was going to touch or search K.B. or other students illegally and allowed Woods to proceed to implement his illegal seizure of K.B." (Emphasis added).  This could be construed as Plaintiffs pleading that Woods's actions resulting in a violation of K.B.'s constitutional rights was highly foreseeable based on the Board's failure to properly train its employees on how to properly and safely seize students involved in an altercation.  See *Miranda*, 900 F.3d at 344.  While this is a close case, the court will, at this stage in the proceedings and mindful of the standard for evaluating Rule 12(b)(6) motions to dismiss, err on the side of caution and find that Plaintiffs have sufficiently plead a *Monell* claim based on one incident involving a failure to train.  The court will remind Plaintiffs, however, that at summary judgment, they may not rely on the allegations contained in their pleadings, but rather must present definite, competent evidence in rebuttal.  See *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).  Defendants may reraise their arguments at a later

stage in the litigation, where the record can be more fully developed "and when the applicable procedural rules permit a more fulsome and searching analysis." See *Access 4 All, Inc. v. Chicago Grande, Inc.*, 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007). Thus, the motion is denied with regard to this claim.

Plaintiffs also claim, under the third *Monell* prong, that Defendant Woods was a person with "final decision policymaking authority." Defendants argue that principals are not final policymakers for school districts under Illinois state law. Defendants are correct in this regard. Under Illinois law, only the Board of Education has final policymaking authority, and just because school administrators might have "the authority to institute corrective measures" on the school district's behalf does not make them final policymakers. *Doe 20 v. Board of Education of Community Unit School District No. 5*, 680 F.Supp.2d 957, 979 (C.D. Ill. 2010), citing *Duda v. Board of Education of Franklin Park Public School District No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998); see also *Jaythan v. Board of Education of Sykuta Elementary School*, 219 F.Supp.3d 840, 846-47 (N.D. Ill. 2016). However, it would be possible for a school administrator to be considered a final policymaker if the policymaking body, such as the Board of Education, in some way delegated its policymaking authority to that administrator. See *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316, 1325-26 (7th Cir. 1993).

Here, Plaintiffs claim that Woods exercised, "or had been delegated authority to exercise, final policymaking authority for District 116 with respect to physical contact with students." This claim, while a completely conclusory statement, at least makes the

allegation that final policymaking authority had been delegated to Woods by the Board. However, later in Count I, Plaintiffs plead that "Defendant Woods acknowledged that the Board had a policy, practice, and custom of student seizures." Plaintiffs allege that "the implementation of this policy, practice, and custom was delegated to Defendant Woods[,]" and that "Defendant Woods had the authority to not only implement, but to define the parameters and put into practice the seizure of minor students." Plaintiffs have essentially plead themselves out of a claim that Woods had final policymaking authority. The allegations in the Complaint state, specifically, that Woods had been delegated the authority to "implement" the Board's policy, define the policy's "parameters," and to put the policy "into practice." These allegations concerning Woods's power suggest that he had the authority to make decisions and implement policy, not the authority to actually make policies. Such allegations do not suffice to allege that Woods had final policymaking authority under the delegation theory because they fail to suggest that he had the ability to make policies for the school district or even UMS. See *Jaythan*, 219 F.Supp.3d at 847. This is borne out even in Plaintiffs' Response, where, at page 3, they argue:

> In this case, the battery perpetrated was by the principal of a school, an employee of the Board. This sufficiently places that defendant under the control of the Board and the superintendent and for that reason Defendant's citations of authority are simply not compelling. With the aggressive nature of the principal's actions, it would be a fair inference that it was an approved practice of the Board to permit its staff to engage students in a physical manner, despite what may have been written in any manual.

This response appears to argue that the Board delegated its authority by virtue of Defendant Woods being an employee of the Board, which is clearly contrary to the case law.  The motion to dismiss is granted as to this aspect of Plaintiffs' *Monell* claim.

IT IS THEREFORE ORDERED:

(1) Defendants' Motion to Dismiss (#7) is GRANTED in part and DENIED in part.  It is granted as to Defendant Urbana School District #116, who is hereby dismissed from the case and terminated as a defendant.  It is granted as to the claim that Woods was a final policymaker, but is denied as to the failure to train claim.

(2) This case is referred to the magistrate judge for further proceedings in accordance with this order.

ENTERED this <u>2nd</u> day of <u>May</u>, 2019.

s/ COLIN S. BRUCE<br>
U.S. DISTRICT JUDGE